RIDER, Barry L., Charles, Kenneth L., Foust, Alan L., Ellis, Stephen, Keen, Stephen F., Larison, Ronald E., Markley, Joseph P., Miller, Donald R. Jr., Singer, Blaine L., Smith, Clare, Executrix of the Estate of Leonard Smith, Smith, LaRue D., Thomas, Daniel H., Trutt, Blaine A., Williams, John Thomas and Vetter, Jon F., individually and on behalf of all other similarly situated, Appellants,

v.

COMMONWEALTH OF PENNSYLVANIA; Jeffes, Glenn R., Commissioner of PA Bureau of Corrections; Pennsylvania Bureau of Corrections; Goolsby, Ann M., Superintendent of Muncy Correctional Institution; Andrews, J.L., Personnel Officer of Muncy Correctional Institution, Millett, John E., Executive Director PA Civil Service Commission; Pennsylvania Civil Service Commission.

No. 87–5492.

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1988.

Decided June 23, 1988.

█

---

Clifford A. Rieders, Jeffrey J. Crossland (argued), Rieders, Travis, Mussina Humphrey & Harris, Williamsport, Pa., for appellants.

LeRoy S. Zimmerman, Atty. Gen., Amy Zapp, Deputy Atty. Gen. (argued), Gregory R. Neuhauser, Sr. Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Chief, Litigation, Harrisburg, Pa., for appellees.

Before SEITZ, SCIRICA and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

■ Barry L. Rider and fourteen other male prison guards (referred to collectively as "the male guards") commenced this action against the Commonwealth of Pennsylvania and state agencies and officials challenging the hiring of only female guards for certain guard positions at the State Correctional Institution in Muncy, Pennsylvania, as violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Equal Pay Act, 29 U.S.C. § 206, 42 U.S.C. § 1983, and Pennsylvania state law. The district court dismissed the male guards' Title VII claim pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that it was barred by res judicata as the result of a Pennsylvania Commonwealth Court judgment holding that the hiring of female guards to monitor female prisoners did not constitute unlawful discrimination against the male guards.[1] We will affirm.

### I.

### A.

The State Correctional Institution at Muncy, Pennsylvania ("SCI–Muncy") is a medium-security prison and the only facility in the Commonwealth's correctional system that houses both male (140) and female (400) inmates. Because SCI–Muncy is not a maximum-security facility, both the male and the female prisoners reside in housing units. Female inmates live in rooms which accommodate two inmates and which contain a sink and a toilet. Female inmates are required to share communal showers located on each floor of each house. Male inmates, on the other hand, are housed in single story units, each with a large common dormitory room containing numerous beds, a communal shower area, and a small recreational area. In addition to these living arrangements, the prison maintains a restricted housing unit for both male and female inmates who have caused, or may cause, disturbances within the institution.

Because inmates of both sexes are incarcerated at the facility, SCI–Muncy hires both male and female guards to monitor the inmates. As of October 27, 1986, the date on which the male guards filed their complaint, the male housing unit was staffed by male guards and the female housing unit by female guards. The restricted housing unit was staffed by four to six guards of both sexes, and a woman sergeant.[2]

Decisions pertaining to the hiring of guards at SCI–Muncy are governed by: (1) a collective bargaining agreement between the American Federation of State, County and Municipal Employees (the "Union") and the Commonwealth's Department of Correction (the "Department"); and (2) a hiring policy statement issued by the Department. Article 30, Section 10 of the collective bargaining agreement directs that all hiring decisions be made on the basis of seniority:

> In making shift assignments to shift openings, preference shall be granted on a seniority basis unless the Employer

---

1. By order dated June 22, 1987, the district court granted the male guards' Fed.R.Civ.P. 54(b) motion and certified its order dismissing their Title VII claim as final, thus making this appeal possible. We note that the district court did not fully comply with this court's certification requirements as set forth in *Allis–Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 366 (3d Cir.1975) (in granting a Fed.R.Civ.P. 54(b) motion, the district court must "specify those factors upon which it relied in granting certification and, thereby, ... furnish us with the benefits of its analysis in marshalling the relevant factors ..."). The district court here justified its Fed.R.Civ.P. 54(b) order solely on the ground that the Title VII claim was the "major claim in this lawsuit." App. at 106. We do not view the district court's certification as fully complying with *Allis–Chalmers Corp.'s* requirements, but we will nevertheless address the issues on appeal. We shall, however, be less generous in accepting such certifications in the future, and will insist upon district courts adhering closely to the requirements which we specified in *Allis–Chalmers Corp.*

2. The record does not disclose the living arrangements or physical characteristics of the restricted housing unit. We are therefore unable to determine the degree to which inmates housed in this unit are, or might be, monitored by guards of the opposite sex. No issue pertaining to restricted housing units is before us in this appeal.

feels it is necessary to assign otherwise in order to protect the efficiency of operation. Seniority status in this regard shall be classification seniority attained at the work site.

In addition, Article 33 of the collective bargaining agreement specifically proscribes employment discrimination:

Both the Employer and the Union agree not to discriminate against any employee on the basis of race, creed, color, ancestry, sex, marital status, age, national origin, non-job related handicap or disability, union membership or political affiliation.

These provisions of the collective bargaining agreement are augmented by the Department's hiring policy guidelines, which state:

a. Guards will not be assigned to work in open view of unclothed inmates of the opposite sex;

b. External escort of prisoners must be by at least one officer of the same sex;

c. Assignments to housing units will involve at least one officer of the same sex as the inmates; and

d. Guards will not conduct strip or frisk searches of inmates of the opposite sex except in case of emergency.

*See* Appellee's Brief at 7.

Under the hiring guidelines established by the Department—with the imprimatur of the Pennsylvania Civil Service Commission [3]—a number of the guard assignments at SCI–Muncy have been designated as being available to female applicants only, notwithstanding the requirement in the collective bargaining agreement that all assignments be based upon seniority. Thus, in February of 1984, a number of the Department's shift vacancy announcements at SCI–Muncy were labeled "C.O.I. VACANCY—FEMALE" and addressed to "All Female C.O.I.'s." [4]

**B.**

In response to the Department's refusal to allow male guards to enter bids for certain guard assignments, the Union filed two grievances claiming that SCI–Muncy had violated the provisions of the collective bargaining agreement that prohibit sex-based discrimination and that require that positions at the prison be filled on the basis of seniority unless the operational needs of the institution dictate otherwise. The grievances, after initial rejection by the Department, were heard by an arbitrator by mutual consent of the parties.

After considering both the Department's policy guidelines and the collective bargaining agreement, the arbitrator concluded that the vacancy announcements which were restricted to females, violated the provisions of the agreement. The arbitrator recognized that the essential issue in the dispute was whether the gender-based distinctions drawn by SCI–Muncy were predicated on a "bona fide occupational qualification" ("BFOQ") and determined that they were not. *See* App. at 99. The arbitrator expressly rejected the Department's assertion that female prisoners have a privacy interest in not being viewed by male guards when undressed or when performing intimate bodily functions.

In reaching his conclusion, the arbitrator relied primarily on *Griffin v. Michigan Dept. of Corrections*, 30 Fair Empl.Prac. Cas. (BNA) 638, 654 F.Supp. 690 (E.D. Mich.1982). In *Griffin*, the district court rejected the prison management's claim that inmates had a right to privacy that created a BFOQ for guard assignments, stating:

Defendant's [Department of Corrections] argument is without merit because (1) it assumes that inmates retain an unqualified protected right of privacy under the

---

**3.** Under the Pennsylvania Civil Service Act, Pa. Stat.Ann. tit. 71, § 741.1 *et seq.* (Purdon 1962 & Supp.1987), the Commonwealth's Civil Service Commission is empowered to designate certain state jobs as being available only to applicants who possess specific characteristics, such as gender, where it determines that possession of

that characteristic is a prerequisite to carrying out the duties and responsibilities of the position.

**4.** "C.O.I." appears to be an acronym for "Correctional Officer _____." The record does not disclose the meaning of the entire term.

Constitution, and (2) it is based on a stereotypical sexual characterization that a viewing of an inmate while nude or performing bodily functions, by a member of the opposite sex, is intrinsically more odious than the viewing of a member of one's own sex. Neither assumption can withstand traditional scrutiny.

Adopting the rationale of the district court in *Griffin*, the arbitrator in the instant case concluded that:

Privacy rights of inmates is not a justification for a BFOQ exception to the general prohibition of discrimination on the basis of sex. It follows, therefore, that the Employer's attempt to draw a delicate balance between the inmates' rights of privacy and the employees' rights under the Agreement has no basis in law.[5]

### C.

In response to the arbitrator's disposition of the male guards' claim, the Department appealed the case to the Commonwealth Court of Pennsylvania. In *Commonwealth Dept. of Corrections v. American Fed. of State, County and Municipal Employees*, 101 Pa. Commw. 121, 515 A.2d 1000 (1986), the Commonwealth Court vacated the arbitrator's decision on the ground that it was not rationally derived from the terms of the collective bargaining agreement.

However, the Commonwealth Court framed its analysis in terms of whether gender was a BFOQ for the guard positions in question:

The key issue, as the arbitrator stated it at the outset, was whether the distinction made by the department in shift assignments was based upon a bona fide occupational qualification. Stated as a contract interpretation question, the issue is whether the department could depart from seniority as the sole criterion "in order to protect the efficiency of operation."

*Commonwealth Dept. of Corrections*, 101 Pa. Commw. at 125, 515 A.2d at 1001 (quoting Art. 30, § 10 of the collective bargaining agreement). After setting up its BFOQ analysis, the court cited *Philadelphia v. Human Relations Commission*, 7 Pa. Commw. 500, 300 A.2d 97 (1973) for the proposition that gender differences could be taken into account under certain circumstances where there were facts "justifying limiting personal contact under intimate circumstances to those of the same sex." 7 Pa.Commw. at 510 n. 7, 30 A.2d at 103 n. 7.[6]

The Commonwealth Court then determined that the arbitrator had gone beyond the confines of his role as an interpreter of the collective bargaining agreement:

... [in reaching his decision] the arbitrator departed from his own sound articulation of the issue, as noted above, and

---

**5.** It should be noted that the arbitrator acknowledged the Supreme Court's decision in *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), in which the Court refused to invalidate a state regulation which prohibited the hiring of female guards in contact positions at all male prisons, concluding that gender was a BFOQ in the circumstances of that case, which involved a danger of violence against women guards. The arbitrator distinguished *Dothard* on the ground that it involved a special threat of violence to the female guards that was not present in the instant case.

**6.** In *Philadelphia v. Human Relations Commission*, 7 Pa.Commw. 500, 300 A.2d 97 (1973), the Commonwealth's Human Relations Commission brought an action against the City of Philadelphia, claiming that the City's Youth Study Center's practice of restricting the supervision of its wards to those of the same gender constituted

sex discrimination under the Pennsylvania Human Relations Act. The City asserted that the circumstances extant at the Center required that supervisory positions at the Center be allowed a BFOQ exception. In embracing the City's argument, the court stated that to .subject a girl under the age of 17 to a "thorough search of her body by a male supervisor could cause not only a temporary traumatic condition, but also permanent irreparable harm to her psyche." 7 Pa.Commw. at 510, 300 A.2d at 102. The court also recognized that to have a woman supervisor "observe daily showers of the boys at a time in life when sex is a mysterious and often troubling force is to risk a permanent emotional impairment under the guise of equality." 7 Pa.Commw. at 510, 300 A.2d at 103. The court thus held that the City had adduced sufficient evidence to support its claim that a gender-specific BFOQ should be granted under the circumstances of that case.

reached his conclusion on the basis of a different issue—balancing the rights of inmates against the rights of guards—which is not involved in the case. The interpretation issue for the arbitrator here was, as he initially recognized, whether the department had a basis for deeming it necessary to depart from seniority 'in order to protect the efficiency of operation.' With respect to resolving that issue, the arbitrator strayed from the *essence of this contract* and from the issue at hand, to import into the case the philosophical views of a federal court, whose position is neither binding nor necessarily persuasive with respect to the law of this Commonwealth.

101 Pa.Commw. at 127, 515 A.2d at 1002 (quoting Art. 30, § 10 of the collective bargaining agreement) (emphasis added).

Having rejected the arbitrator's reliance upon *Griffin*, 30 Fair Empl.Prac.Cas. (BNA) 638, 654 F.Supp. 690, the Commonwealth Court proceeded to undertake its own interpretation of the collective bargaining agreement. The court found that the essence of the contract involved the Department's "responsibility to deal with its inmate population effectively, efficiently and humanely." 101 Pa.Commw. at 127, 515 A.2d at 1003. Applying both the "rational derivation essence test" set forth in *Philadelphia Housing Authority v. Union of Security Officers No. 1*, 500 Pa. 213, 216, 455 A.2d 625, 627 (1983) and the "reasonableness language" test used in *International Brotherhood of Firemen and Oilers v. School District of Philadelphia*, 465 Pa. 356, 350 A.2d 804 (1976), the Commonwealth Court then determined that "it [was] manifestly unreasonable to conclude that prison management could have intended to bargain away its absolute responsibility to accord to prisoners such vestige of human status as is embodied in personal privacy." 101 Pa.Commw. at 128, 515 A.2d at 1003.[7] Implicit in the Commonwealth Court's holding that the arbitrator's award

was not rationally derived from the contract, was a finding that female gender falls within the "efficiency of the operation" exception to the seniority preference rule contained in Article 30, § 10 of the Agreement and thus is a BFOQ for the positions advertised at SCI–Muncy. Given the Commonwealth Court's initial characterization of the issue before it as a BFOQ question, *see* 101 Pa. Commw. at 125, 515 A.2d at 1001, its holding perforce recognized that female gender is a BFOQ with respect to the positions in question.

### D.

In the wake of the Commonwealth Court's decision—and in lieu of an appeal to the Pennsylvania Supreme Court—the male guards brought the present action in the district court, claiming that the Department's gender-based hiring policy violated Title VII, 42 U.S.C. § 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. § 206, 42 U.S.C. § 1983, and Pennsylvania state law. Their complaint sought a declaratory judgment setting forth their rights as well as mandamus relief invalidating the Department's gender-based hiring policies. The complaint also requested injunctive relief, damages, costs, and attorneys fees. App. at 33–34.

The Commonwealth moved to dismiss the male guards' federal suit on the ground that it was precluded by the state court's decision in *Commonwealth Dept. of Corrections*, under the doctrine of res judicata. The male guards opposed the motion to dismiss, arguing that the Commonwealth Court's decision did not constitute a decision on the merits of the federal claims and thus could not have preclusive effect.

The district court disagreed with the male guards' position and gave res judicata effect to the Commonwealth Court's judgment with respect to the Title VII count (Count II) of the male guards' complaint. The district court recognized that the issue

---

**7.** This decision is consistent with the New York Court of Appeals' recent affirmance in *State Division of Human Rights v. Oneida County*, 70 N.Y.2d 974, 526 N.Y.S.2d 426, 521 N.E.2d 433 (1988), *aff'g*, 119 A.D.2d 1006, 500 N.Y.S.2d 995 (1986, 4th Dept.), in which the court sustained the Appellate Division's holding that being a male is a BFOQ for a sheriffs position that involves monitoring male prisoners' toilet and shower facilities.

before both the arbitrator and the Commonwealth Court was whether sex was a BFOQ for certain positions certified and advertised for females only at SCI–Muncy. App. at 98–99. With this characterization of the issue in mind, the court then applied the Supreme Court's holding in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), which it construed as requiring the preclusion of the male guards' Title VII claim. In its May 20, 1987 Order of Dismissal, the district court stated: "Having carefully reviewed the *Com., Dept. of Corrections* case we conclude that the Commonwealth Court could not have determined that the award of the arbitrator was not based on the essence of the collective bargaining agreement without also deciding that sex is a bona fide occupational qualification for the positions certified and advertised for females only at Muncy." App. at 102. By Order dated June 22, 1987, the district court reaffirmed its dismissal of the male guards' Title VII claim and certified its judgment as final, pursuant to Fed.R.Civ.P. 54(b). *See* note 1 *supra*.

On appeal from that order, the male guards claim that the district court erred in granting the Commonwealth's motion to dismiss pursuant to the doctrine of res judicata. They argue that the Commonwealth Court's decision should not have been given preclusive effect because: (1) the issues resolved by the state court were not identical to those presented to the district court; (2) the causes of action in the state and federal courts were not substantially the same; (3) they were not afforded a full and fair opportunity to litigate their Title VII claim in the state court; and (4) the state court decision did not constitute a judgment on the merits of their Title VII claim. The male guards also assert that in the Title VII context, the Supreme Court has expressly prohibited federal courts from giving preclusive effect to an arbitra-

tor's award that is subsequently reviewed by a state court.

We are unconvinced by these arguments and thus will affirm the district court's dismissal of the male guards' Title VII claim.

## II.

Federal law requires that "[t]he ... judicial proceedings of any court of any State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ..." 28 U.S.C. § 1738. Thus, federal courts must "give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). *Accord University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986); *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 80, 104 S.Ct. 892, 895, 79 L.Ed.2d 56 (1984). Because the district court in this case gave preclusive effect to the decision of a Pennsylvania state court, our first task in reviewing the district court's order is to determine whether a Pennsylvania state court would similarly have dismissed the male guards' Title VII claim on res judicata grounds. *See Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988); *LaCourse v. Firemen's Ins. Co.,* 756 F.2d 10, 12 (3d Cir.1985).[8]

The related doctrines of res judicata and collateral estoppel are often relied upon by federal courts to preclude relitigation of issues that have previously been disposed of in an earlier action. Res judicata precludes parties or their privies whose action has reached a final judgment on the merits, from relitigating issues "that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. at 94, 101 S.Ct. at 414. Under collateral estoppel, on the other

---

8. Inasmuch as we do not sit as a court that reviews state court judgments, we express no opinion as to whether the Commonwealth Court's analysis and holding were correct. That determination was for a reviewing court in

Pennsylvania to make. However, as we observed earlier, the male guards did not appeal the Commonwealth Court's ruling to the Pennsylvania Supreme Court.

hand, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* Both doctrines are viewed as a means of reducing the "costs and vexation of multiple lawsuits," *id.*, conserving judicial resources, facilitating judicial consistency, and "encourag[ing] reliance on adjudication." *Id.; see Gregory,* 843 F.2d at 115; *Davis v. United States Steel Supply,* 688 F.2d 166, 174 (3d Cir.1982) (in banc), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983); *Switlik v. Hardwicke Co., Inc.,* 651 F.2d 852 (3d Cir.), *cert. denied,* 454 U.S. 1064, 102 S.Ct. 614, 70 L.Ed. 2d 601 (1981).

In an attempt to simplify the often confusing interchangeable use of the terms res judicata and collateral estoppel, this court recently has adopted the Supreme Court's and Second Restatement of Judgments' use of the terms "claim preclusion" and "issue preclusion:"

> Claim preclusion replaces 'res judicata' and encompasses both merger and bar principles in giving dispositive effect in a later action to a prior judgment. Issue preclusion now substitutes for 'collateral estoppel.' This preclusive device is somewhat more limited than claim preclusion because [it involves] relitigation only of an issue identical to that adjudicated in the prior action.

*Gregory,* 843 F.2d at 116 (citing *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1). *See* Restatement (Second) of Judgments ch. 1 (1982); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4416 at 136 (1981). *See also Jackson Jordan, Inc. v. Plasser American Corp.,* 747 F.2d 1567, 1575 (Fed.Cir.1984); *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535–36 (5th Cir. 1978).

The district court's dismissal in this case turned on its belief that the Commonwealth

Court had determined the issue that was dispositive of the male guards' Title VII claim, i.e., that female gender is a BFOQ for the positions sought by the male guards at SCI–Muncy.[9] Thus, our analysis will center on issue preclusion rather than claim preclusion.

### III.

Issue preclusion embodies the principle that "later courts should honor the first actual decision of a matter that has been actually litigated." C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4416, at 136 (1981). *Accord N.L.R.B. v. Donna–Lee Sportswear Co., Inc.,* 836 F.2d 31, 33 (1st Cir.1987). As the Restatement of Judgments explains:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 at 250 (1982). By precluding a court from making a second determination as to an issue on which an earlier court has previously rendered a decision, the doctrine of issue preclusion assists in the "maintenance of the social order" and "secure[s] the peace and repose of society by the settlement of matters capable of judicial determination." *Southern Pacific Railroad v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed.2d 355 (1897) (Harlan, J.).

Under Pennsylvania law, four essential elements must be present before issue preclusion may be applied: "1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication ["identical

---

**9.** Although we believe that the Commonwealth Court's conclusion that female gender is a BFOQ for the guard positions involved in this case is a factual finding, issue preclusion would apply even if it were alternatively viewed as a

legal conclusion. *See United States v. Stauffer Chem. Co.,* 464 U.S. 165, 170–71, 104 S.Ct. 575, 578, 78 L.Ed.2d 388 (1984); *McDonald v. City of West Branch,* 466 U.S. 284, 287 n. 5, 104 S.Ct. 1799, 1801 n. 5, 80 L.Ed.2d 302 (1984).

parties"], and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action." *Safeguard Mut. Ins. Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975) (citing *In Re: Estate of Ellis,* 460 Pa. 281, 287, 333 A.2d 728, 731 (1975)). *See Gregory v. Chehi,* 843 F.2d 111, 115–16; *Public Serv. Mut. Co. v. Cohen,* 616 F.2d 704 (3d Cir.1980); *Melikian v. Corradetti,* 791 F.2d 274, 277 (3d Cir.1986) (applying New Jersey law).

Although the district court accurately stated the law of Pennsylvania with respect to issue preclusion, *see* App. at 100, the district court did not systematically apply each of the necessary elements to the facts of the present case.[10] Instead, the district court appears to have assumed the existence of all of the prerequisites other than the requirement of a final judgment on the merits. Accordingly, the district court focused its attention exclusively on this issue.

On appeal, however, the male guards not only challenge the existence of the requisite final judgment on the merits in the Commonwealth Court, but also assert that the issues in the two suits were not identical and that they were not afforded a full and fair opportunity to litigate the issues pertinent to their Title VII claim. The Commonwealth points out—and its argument is borne out by the district court's analysis—that the only matter of contention raised by the male guards in the district court was whether the state court's judgment amounted to a judgment on the merits of the male guards' sex discrimination claim. The Commonwealth now argues that the male guards are barred from raising the issues that they failed to contest below.

We agree with the Commonwealth's contention but are satisfied that even had the male guards contested each of the four factors in the district court, the result would have been no different. Thus, in an excess of caution, we will briefly consider each factor *seriatim,* bearing in mind that we are under no obligation to do so.[11]

## A. Identity of the Issues

The male guards contend on appeal that the issues before the arbitrator and the Commonwealth Court were distinct from the issues relevant to their Title VII claim and thus issue preclusion could not stand as an obstacle to their federal suit. The thrust of the male guards' argument is that an arbitrator's role in construing a collective bargaining agreement is too circumscribed to form the basis for the preclusion of their subsequent Title VII claim.

Under Pennsylvania law, "review of [an] arbitrator's finding is limited to whether the decision draws its essence from the collective bargaining agreement." *Neshaminy Fed. of Teachers v. School Dist.,* 501 Pa. 534, 540, 462 A.2d 629, 632 (1983); *Scranton Federation of Teachers v. Scranton School District,* 498 Pa. 58, 64, 444 A.2d 1144, 1146 (1982); *Association of Pennsylvania St. Coll. and University Faculties v. Pennsylvania,* 496 Pa. 239, 242–43, 436 A.2d 987, 989 (1981). Thus, an arbitrator's award must be upheld by a reviewing state court whenever " 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention ...' " *Neshaminy Fed. of Teachers,* 501 Pa. at 541, 462 A.2d at 632 (*quoting Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* 473 Pa. 576, 593–94, 375 A.2d 1267, 1275 (1977) (*quoting Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1129 (3d Cir.1969))). On the basis of this stan-

---

**10.** In the district court, the male guards apparently did not argue that the requirements of an "identity of issues" and a "full and fair opportunity to litigate their claim" had not been satisfied. Hence, it is understandable that the district court would not address these factors. *See* App. at 100.

**11.** Neither in the district court nor before us have the male guards challenged the element of issue preclusion involving "identity of the persons." This requirement clearly has been met. Moreover, we need not address any contention that there was no identity of the causes of action in the state and federal proceedings because "cause of action" identity is not a requirement of issue preclusion.

dard, the male guards argue that the district court should not have given preclusive effect to the Commonwealth Court's decision.

The flaw in the male guard's argument is that it fails to take into account the manner in which both the arbitrator and the Commonwealth Court grafted classic Title VII BFOQ analysis onto their respective interpretations of the agreement. As discussed above, at 985–986 *supra,* both the arbitrator and the Commonwealth Court identified the contract issue as "whether the gender distinction made by the Department in its advertisements for shift vacancies could be justified as a BFOQ." The arbitrator answered this question in the negative, concluding that the "[p]rivacy rights of the inmates is not a justification for a BFOQ exception to the general prohibition of discrimination on the basis of sex." *Commonwealth Dept. of Corrections,* 101 Pa. Commw. at 126, 515 A.2d at 1002. On appeal, the Commonwealth Court disagreed and answered that same question in the affirmative. It held that female gender was indeed a BFOQ for the jobs at issue in this case. Thus, it is beyond dispute that the issue throughout both proceedings prior to the institution of the instant federal suit was whether female gender was a BFOQ for the positions being advertised at SCI–Muncy.

The district court correctly recognized that the merits of the male guards' Title VII claim critically hinged on whether gender was a BFOQ for the vacant guard positions at SCI–Muncy. App. at 101. Indeed, Title VII provides, in relevant part, that:

> ... it shall not be an unlawful employment practice for an employer to hire and employ employees ... on the basis of ... sex ... *where ... sex ... is a bona fide occupational qualification* reasonably necessary to the normal operation of the particular business or enterprise ...

42 U.S.C. § 2000e–2(e)(1) (emphasis added). Given Title VII's explicit recognition of the BFOQ exception to the statute's proscription of gender-based discrimination, there

can be little doubt that the issue identified in the arbitration, and decided by the Commonwealth Court, as well as the issue before the district court, were all identical—i.e., whether being a female was a BFOQ for the guard jobs available at SCI–Muncy.

### B. Full and Fair Opportunity to Litigate

■ The male guards' claim that they were denied a full and fair opportunity to litigate their Title VII claim also fails. *Allen v. McCurry* warns that "collateral estoppel [issue preclusion] cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the issue in the earlier case." 449 U.S. at 95, 101 S.Ct. at 415; *Kremer,* 456 U.S. at 480–81, 102 S.Ct. at 1896–97; *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971); *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 935 (3d Cir.) (per curiam), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984). While the Supreme Court has repeatedly expressed the "full and fair opportunity" requirement, it has "not specified the source or defined the content of the requirement that the first adjudication offer a full and fair opportunity to litigate." *Kremer,* 456 U.S. at 481, 102 S.Ct. at 1897. The *Kremer* court did, however, state that for purposes of 28 U.S.C. § 1738, a "full and fair opportunity" will be presumed whenever *"state proceedings ... satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause."* 456 U.S. at 481, 102 S.Ct. at 1897 (emphasis added).

Under this admittedly general standard, we have no doubt that the male guards were afforded a full and fair opportunity to press their discrimination claim in the Commonwealth Court. As indicated above, both the arbitrator and the Commonwealth Court sought to answer the sole question of whether female gender was a BFOQ for the job vacancies in question. There is no claim of procedural deficiencies in the

record, nor is there any contention that the male guards were deprived of their procedural due process rights by either of the tribunals below. As we read the record, a BFOQ analysis was undertaken by both the arbitrator and the state court. Nothing in the record suggests that the male guards have been deprived either of their right to submit evidence or their right to an impartial hearing with respect to this issue.[12] *See Carter v. City of Emporia, Kan.,* 815 F.2d 617, 621 (10th Cir.1987).

## C. *Judgment on the Merits*

■ The male guards argue before us, as they did in the district court, that the Commonwealth Court's decision should not be viewed as a judgment on the merits of their discrimination claim and thus should not prevent them from challenging SCI–Muncy's hiring policies as discriminatory. As we have earlier noted, this was the only issue preclusion factor challenged in the district court.

The male guards' primary contention is that the Commonwealth Court dealt exclusively with the arbitrator's failure to properly interpret the collective bargaining agreement and thus never fully considered whether, in fact, female gender is a BFOQ under Title VII. *See* Appellant's Reply Brief at 9. More specifically, the male guards reason that, because the Commonwealth Court overturned the arbitrator's decision on the basis that he exceeded his authority by relying on the Title VII analysis in *Griffin v. Michigan Dept. of Corrections,* 30 Fair Empl.Prac.Cas. (BNA) 638, 654 F.Supp. 690 (E.D.Mich.1982), the Commonwealth Court itself never adjudicated the merits of their discrimination claim.

This argument would be compelling if the Commonwealth Court had limited its review *solely* to whether the arbitrator had properly applied the principles of contract interpretation. However, as we read the Commonwealth Court's opinion, its judgment was derived, in large part, from an

12. The male guards place great stock in *Bottini v. Sadore Management Corp.,* 764 F.2d 116 (2d Cir.1985), which they assert supports the principle that arbitration proceedings are never entitled to preclusive value in subsequent Title VII actions, even where a state court has reviewed the arbitrator's decision. *Bottini* involved a building superintendent who was discharged for unsatisfactory job performance, due, at least in part, to his absence from work on Sunday mornings while attending meetings of the Jehovah Witnesses. An arbitrator subsequently found good cause for the discharge and ordered Bottini to vacate his free apartment within 30 days. Bottini challenged the arbitrator's decision in state court. After his petition was denied, Bottini brought no further appeal. The landlord obtained a warrant for Bottini's eviction. Bottini then commenced a Title VII action in federal district court, alleging discrimination. That action was dismissed on res judicata grounds. On appeal, the Second Circuit reversed, holding that the state proceedings did not constitute a judgment on the merits of Bottini's Title VII action, and did not afford Bottini a full and fair opportunity to litigate his Title VII claim.

Even if we were bound by the holding in *Bottini,* which of course we are not, we would not find it apposite because of the significant distinctions between *Bottini* and the instant case. Unlike the arbitration and the Commonwealth Court proceedings in the instant case—each of which analyzed and dealt head on with the dispositive BFOQ issue—neither of the state

court decisions in *Bottini* addressed Bottini's discrimination claims. Indeed, Bottini's discrimination claim had not been presented to either of the state tribunals. Moreover, unlike the instant case, the Second Circuit in *Bottini,* applying New York law, held that in all events, preclusion was unavailable because neither of the state courts involved had the authority or the jurisdiction to review the discrimination claims. Thus, *Bottini* lends no support to the male guards' claim here.

The Seventh Circuit's holding in *Kirk v. Bremen Comm. High Sch. Dist. Bd. of Educ.,* 811 F.2d 347 (7th Cir.1987), upon which the male guards also rely, is similarly inapposite. In *Kirk,* the Court held that a state court's decision which did not address Kirk's discrimination claim did not preclude his subsequent Title VII action. *Kirk* involved a male high school instructor who was laid off as part of a reduction in force, while a number of female instructors with less seniority were retained. The high school's justification for its departure from seniority was Kirk's inability to supervise female high school students in the females' locker room. Although the facts of *Kirk* are similar in some respects to the facts of the instant case, *Kirk* is inapposite because there the state court never addressed Kirk's discrimination claim and thus decided no issue that was asserted in Kirk's subsequent Title VII suit. Hence, unlike the instant case in which the BFOQ question was presented and decided in state court, in *Kirk* no basis existed for claim or issue preclusion as a result of the state court's action.

independent analysis of the BFOQ question. *See Commonwealth Dept. of Corrections*, 101 Pa.Commw. at 125–29, 515 A.2d at 1002–03. Whether the Commonwealth Court exceeded its authority by straying beyond the confines of its proper standard of review is not for us to decide. Indeed, the only court with jurisdiction to address that question is the Pennsylvania Supreme Court. Thus, the male guards' contention, which we believe can only result from a "crabbed and unduly technical reading of the Commonwealth Court's opinion," *Davis*, 688 F.2d at 173, is simply inconsistent with the Commonwealth Court's analysis.

A nearly identical argument was considered and rejected by the *Kremer* court. Kremer argued that the New York Supreme Court's decision affirming the New York Human Rights Division's dismissal of his discrimination claim should not be viewed as a decision on the merits of his claim because the state court's standard of review was whether the Human Rights Division's decision was arbitrary and capricious. The Supreme Court nevertheless construed the state court's affirmance of Kremer's dismissal as a decision that the claim lacked merit as a matter of law. *See Kremer*, 456 U.S. at 480 n. 21, 102 S.Ct. at 1896 n. 21.

This court's holding in *Davis v. United States Steel Supply*, 688 F.2d 166, is also instructive. In *Davis*, Thelma Davis, a black woman, filed an administrative action with the City of Pittsburgh Commission on Human Relations, alleging that her discharge by U.S. Steel was the result of racial discrimination. After the Commission had decided in Davis' favor, U.S. Steel appealed to a state court which held that there was insufficient evidence in the record to support the Commission's conclusion. Thereafter, Davis commenced an action in federal district court claiming a violation of 42 U.S.C. § 1981. Citing the Supreme Court's decision in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), we held *in banc* that Davis' claim under § 1981 was precluded by the prior state proceedings.

In that case, Davis argued that the state court's review of the Commission on Human Relations' decision should not be viewed as a judgment on the merits of her § 1981 claim. The Pennsylvania state court had held that " 'none of the [Commission's] findings is sufficient to support the Commission's conclusions' that U.S. Steel discriminated against her in violation of the [relevant] Pittsburgh ordinance...." *Davis*, 688 F.2d at 173. Although the state court never directly addressed the issue of whether U.S. Steel, in fact, had discriminated against Davis, we nevertheless held that, "[w]hatever language the [Commonwealth] court utilized, the court clearly concluded that the findings and record in the case were inadequate to support the conclusion that U.S. Steel had discriminated against Davis because of her race." *Id.*

Similarly, we believe that, whatever else the Commonwealth Court may have considered in the instant case, it clearly considered and disposed of the merits that gave rise to this dispute by holding, as it did, that female gender is a BFOQ for monitoring female inmates.

## IV.

The male guards also suggest that the Supreme Court's decisions in *Kremer*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) and *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) militate against giving preclusive effect to the Commonwealth Court's decision, even if all of the requirements of issue preclusion have been met. We cannot agree. As our discussion has shown, *Kremer* supports our conclusion that preclusive effect must be given to the Commonwealth Court's determination. *Alexander*, on the other hand, is a vastly different case than the case presently before us.

In *Alexander*, Harrell Alexander, Sr., a black, was discharged from his position as a drill operator for producing too many defective parts. He thereafter filed a grievance under the anti-discrimination clause of a collective bargaining agreement between the company and his union, which

was rejected. Upon rejection, an arbitration hearing was held at which the arbitrator ruled that Alexander's racial discrimination claim was meritless and that his discharge was for cause. Alexander then filed a Title VII claim in district court, which was dismissed as res judicata. On certiorari to the Supreme Court, the Court framed the issue before it as being "under what circumstances, if any, an employee's statutory right to a trial *de novo* under Title VII may be foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Alexander*, 415 U.S. at 38, 94 S.Ct. at 1015. After a lengthy discussion of purposes underlying Title VII, the Court concluded that an *unreviewed* arbitration decision was not entitled to preclusive effect in a subsequent Title VII action. It reached this result, in substantial part, because endowing an arbitration decision with preclusive weight would deprive a plaintiff of the type of process envisioned by Title VII, and in particular, of the full array of protections and practices available in a court of record. *See id.* at 56–60, 94 S.Ct. at 1023–25.

The distinction between our case and *Alexander* is immediately apparent. While it is true that the Supreme Court has consistently held that an unreviewed arbitration decision does not preclude a federal court action, *see, e.g., McDonald v. City of West Branch*, 466 U.S. 284, 288, 104 S.Ct. 1799, 1802, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 742–45, 101 S.Ct. 1437, 1445–47, 67 L.Ed.2d 641 (1981); *Alexander*, 415 U.S. at 56–60, 94 S.Ct. at 1023–25; *cf. University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 3223, 92 L.Ed.2d 635 (1986), the Supreme Court has distinguished between those cases and cases in which an intervening state court proceeding reviewed a state agency's decision prior to the commencement of a federal action.[13] *See Kremer*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262, *see generally* J. Cook & J. Sobieski, *Civil Rights Actions* ¶ 3.22, 3–212–16 (1987).

In the latter instance, the Supreme Court has allowed preclusion of the subsequent federal suit on the theory that state court proceedings provide greater protection than arbitration proceedings and thus are to be given preclusive effect under 28 U.S.C. § 1738 when the requirements of claim or issue preclusion have been met. *See Kremer*, 456 U.S. at 476–85, 102 S.Ct. at 1894–99. Accordingly, this court subsequently interpreted *Kremer's* mandate as requiring federal courts to give preclusive effect to state court judgments, so long as the state's res judicata requirements have been satisfied. *See Gregory v. Chehi*, 843 F.2d 111; *Davis*, 688 F.2d 166.

In *Gregory*, James Gregory, a police officer, was discharged from his position after allegedly violating departmental rules. Gregory's dismissal was thereafter reviewed by a township council pursuant to the Local Agency Law, 2 Pa.Cons.Stat.Ann. § 752 (Purdon Supp.1987), and the Police Tenure Act, 53 Pa.Stat.Ann. tit. § 811 (Purdon 1974). After conducting hearings, the council determined that Gregory's dismissal was justified. Gregory then appealed to a Pennsylvania Court of Common Pleas, naming the township and the township council members as defendants. After delineating its standard of review as "limited to a determination of whether the ... [council] abused its discretion, committed an error of law, or violated any constitutional rights," *Gregory*, 843 F.2d at 114, the Common Pleas Court upheld Gregory's discharge.

As is true of the male guards in the present case, Gregory did not appeal the Common Pleas Court decision to a higher state court but instead filed a suit in federal court. Gregory's federal suit included additional defendants and prayers for relief, as well as new previously unasserted, constitutional claims. Despite the various additions to Gregory's suit, the district court held that his due process claim predicated on the denial of his first amendment rights was precluded by res judicata.

---

13. The Supreme Court has not directly addressed the issue of whether an arbitrator's decision that has been reviewed by a state court is entitled to preclusive effect.

We affirmed the district court's holding on the ground that the essence of Gregory's state and federal claims was that he had been unlawfully discharged from his employment. Noting that Gregory's federal claims encompassed additional defendants and entitled him to forms of relief not available in the prior state proceedings, we nevertheless upheld the district court stating that Gregory "had but one cause of action for wrongful discharge, even if different forms of relief were available and varying theories of constitutional and statutory violations potentially were applicable. The claim asserted by [Gregory] in both state and federal courts remains indivisible, and thus satisfies the second condition [identity of causes of action] for claim preclusion." *Id.* at 119.

While both *Gregory* and *Davis* (discussed earlier, at 994 *supra*) utilized issue preclusion as such, their analyses of claim preclusion so closely track the analysis required for issue preclusion that in the context of the present case, no meaningful difference can be found. Here, the BFOQ issue is so inextricably intertwined with the cause of action presented in both the state and federal proceedings, we are satisfied that both *Gregory* and *Davis* dictate the result which we reach.[14]

In *Davis*, we stated:

A single cause of action may comprise claims under a number of different statutory and common law grounds. Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims ... In both her state and federal proceedings, Davis sought redress for her treatment at the hands of U.S. Steel on ground that the treatment was racially discriminatory and therefore illegal.

*Davis*, 688 F.2d at 171.

Here, as in *Gregory* and *Davis*, the underlying event giving substance to the claim of discrimination has uniformly and consistently been the same. That very issue, i.e., the issue of the existence of BFOQ, has been tried and decided, albeit by a state court. We have been directed to no authority which would permit the male guards to retry that issue *de novo* in a different forum. Thus, we are satisfied that the analyses, the reasoning, and the holdings of *Kremer, Elliott, Davis* and *Gregory* clearly require that a federal discrimination action should be precluded by a prior state court proceeding between the same parties when the state proceeding has decided the same issues of discrimination on the merits.

## V.

The district court's Order of June 22, 1987, dismissing the Title VII Count (Count II) of the male guards' complaint, will be affirmed.

---

**14.** As suggested by the majority in *Davis*, the doctrines of claim preclusion and issue preclusion will often apply to the same set of facts. Although the *Davis* court relied on claim preclusion, it stated that even if claim preclusion could somehow be shown not to apply, "the Commonwealth Court's conclusion that U.S. Steel had not been shown to have acted with a racially discriminatory motive still would constitute collateral estoppel [issue preclusion] against a similar allegation in a § 1981 action. As long as the Pennsylvania procedures were fair and adequate under 28 U.S.C. § 1738, Davis would 'at least [be] estopped from relitigating the issue of employment discrimination arising from the same events.'" *Davis*, 688 F.2d at 173 n. 8 (quoting *Kremer*, 456 U.S. at 482 n. 22, 102 S.Ct. at 1897 n. 22). Because we are satisfied that in the present case the Commonwealth Court decided that in this context female gender constitutes a BFOQ, the male guards are, at the very least, "estopped from relitigating" this issue.