

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2003

# Minnick v. Duquesne

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2452

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Minnick v. Duquesne" (2003). *2003 Decisions.* Paper 485.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/485

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-2452

———————

WILLIAM MINNICK,
                                        Appellant

v.

CITY OF DUQUESNE;
GEORGE MATTA; PHILIP KRIVACEK;
LORAIN NOVAK; DAVID POLJAK

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 99-cv-02039)
District Judge:  Honorable Ila Jeanne Sensenich

———————

Argued May 14, 2003
Before:  RENDELL, SMITH and ALDISERT, <u>Circuit</u> <u>Judges</u>.

(Filed: June 4, 2003 )

———————

Edward A. Olds, Esq.     [ARGUED]
1007 Mount Royal Boulevard
Pittsburgh, PA  15223
  *Counsel for Appellant*

John F. Cambest, Esq.    [ARGUED]
Dodaro, Kennedy & Cambest
1001 Armore Boulevard, Suite 100
Pittsburgh, PA  15221
  *Counsel for Appellees*

————————

———————

RENDELL, Circuit Judge.

William Minnick filed this action under 42 U.S.C. § 1983 against the City of Duquesne (the "City"), alleging that the City's refusal to enroll him in its pension plan violated his Fourteenth Amendment right to equal protection. The District Court held that the facts found by the Pennsylvania Commonwealth Court in its review of an earlier arbitration decision had "issue preclusive" effect, and had established that Minnick was not similarly situated to the other City employees and that the City had a rational basis for its decision. The Court then entered summary judgment in favor of the City. For the reasons stated below, we will affirm.

The City of Duquesne's pension plan entitles City employees over the age of 60 who have worked for the City for at least 20 years to receive compensation for the remainder of their lives. Employees are required to be registered for the plan as soon as they are hired. The plan is funded by joint contributions from the City and the employee, with the employee required to contribute 3% of his monthly salary. The City has been a "distressed community" since 1984; as of 1986, the Commonwealth has been making contributions to the pension plan on behalf of the City.

Minnick was hired by the City in 1972 as a per diem employee. Minnick was laid off and then rehired as a permanent employee. At that time, he was told that he would not be able to participate in the City's pension plan unless he paid all retroactive contributions

back to the date he had been originally hired. Minnick did have enough money to do so, and so did not join the plan. In 1979 and again in 1989, Minnick asked about joining the plan and was again told that he would have to buy back his years of service. Minnick still did not have the money and so did not join. Finally, in 1998, Minnick was in a position to buy back his previous years of service. However, the City refused to let him do so because retroactively enrolling Minnick would impose a significant cost.

Minnick filed a grievance with his union, which went to arbitration. The arbitrator found that this grievance was arbitrable under the collective bargaining agreement, that Minnick should be enrolled in the plan retroactive to March 1998, when he first filed the grievance, and that Minnick was barred from asserting his rights under the plan prior to that date by the doctrine of laches. The union appealed the arbitrator's decision to the Court of Common Pleas, on the grounds that the arbitrator failed to disclose a conflict of interest. The court vacated the award, finding that the arbitrator's undisclosed conflict raised the appearance of impropriety and that the award was not consistent with the facts and the law.

The City then appealed to the Commonwealth Court, which reversed and reinstated the award. First, the court found that the inference of bias did not rise to the level of "evident partiality." Second, the court examined the arbitrator's laches ruling. The court stated that its standard of review was limited and that it would uphold the arbitrator's decision "if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement." State Sys. of Higher Educ. v. State College University Prof'l Ass'n, 560 Pa. 135, 150 (1999). However, the court then undertook its own laches analysis, and

3

found that "the City did suffer prejudice from the admitted delay of Minnick in pursuing his rights," and that it "would be required to pay much more from its own funds than if Minnick had not slept on his rights."  Because it agreed with the arbitrator's decision, the court reversed the court of common pleas and reinstated the award.  Minnick did not appeal.

While his grievance was making its way through the Pennsylvania courts, Minnick filed a complaint in the District Court for the Western District of Pennsylvania, alleging that the City's decision violated his right to equal protection under the Fourteenth Amendment because he was the only full time permanent City employee whose service had not been recognized for purposes of the pension plan, claiming that the decision had violated his rights under unidentified state laws, and requesting a declaratory judgment stating that upon reaching the age of 60 he will be entitled to his pension.  The parties agreed to trial before a Magistrate.  After discovery, the parties filed cross-motions for summary judgment, and the Court granted summary judgment in favor of the City.

First, the District Court held that the Full Faith and Credit Act, 28 U.S.C. § 1738, required it to give preclusive effect to the Commonwealth Court's review of the arbitration award.  The Court then held that because the equal protection claim could not have been presented in the arbitration proceedings it was not barred by claim preclusion.  However, the Court held that Minnick's undefined state law claims could have been presented in the state litigation and were therefore barred by claim preclusion.

Finally, the Court held that Minnick's equal protection claim was barred by issue preclusion.  The Court found that although the state court had not decided the issue of equal

4

protection, it did decide that the City suffered prejudice from Minnick's delay in pursuing his rights. The Court then applied the facts as found by the Commonwealth Court to the requirements of equal protection law, stating:

> The Commonwealth Court found that the City suffered prejudice from [Minnick]'s delay in pursuing his rights. It had become a distressed community and to require it to make all contributions at one time was a form of prejudice. The City would be required to pay much more from its own funds than if [Minnick] had not slept on his rights. This would appear to be a rational basis for treating [Minnick] differently from the other employees for whom the City had been making contributions to the pension plan and also establish that [Minnick] was not similarly situated to the other employees.

Minnick v. City of Duquesne, No. 99-2039, slip op. at 13-14 (W.D. Pa. May 8, 2002). The Court went on to distinguish Minnick's case from that of the plaintiffs in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), in which the Supreme Court upheld an equal protection claim based on a "class of one," finding that here, Minnick "was treated differently because his situation was different. Neither he nor the City had made payments towards his pension and to make him equal with the other employees by giving him credit for all of his prior years of service would be very expensive for the City." The Court then granted summary judgment for the City, holding that "[t]he facts found by the Commonwealth Court establish a rational factual basis for the City's decision." Minnick appeals the Court's grant of summary judgment on his equal protection claim.

The District Court had jurisdiction over Minnick's section 1983 action under 28 U.S.C. § 1331. We have jurisdiction over the Court's final orders pursuant to 28 U.S.C. § 1291. We review the Court's decision to give issue preclusive effect to the

5

Commonwealth Court's opinion de novo.  Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002).  We also review de novo the District Court's grant of summary judgment, employing the same standard as the District Court, that is, whether there remain any genuine issues of material fact.  Fed. R. Civ. Pro. 56 (c); Suders v. Easton, 325 F.3d 432, 441 (3d Cir. 2003).

Minnick raises three points of error: first, he argues that the Commonwealth Court's review of the arbitration award is not entitled to preclusive effect under the Full Faith and Credit Act; second, that the Commonwealth Court's finding that the City was prejudiced is not identical to the issue of whether his equal protection rights were violated; and third, that he was not afforded a full and fair opportunity to litigate the issue in the state courts.

The first question is whether the Commonwealth Court's review of the arbitration award is entitled to any preclusive effect.  The Federal Full Faith and Credit Act, 28 U.S.C. § 1738, states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  The Act thus "obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment."  McDonald v. City of West Branch, 466 U.S. 284, 287 (1984).  Under Pennsylvania law, arbitration proceedings are considered final judgments for purposes of issue preclusion.  Witkowski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999).  However, under federal law, unappealed arbitration awards are not entitled to preclusive effect, because they are not "judicial proceedings."

6

McDonald, 466 U.S. at 287.

Minnick conceded at oral argument that a state court's review of an arbitration award, as opposed to an unappealed arbitration decision, may be entitled to preclusive effect under the Full Faith and Credit Act.  See Rider v. Pennsylvania, 850 F.2d 982, 988 (3d Cir. 1988); Jalil v. Avdel Corp., 873 F.2d 701, 704 (3d Cir. 1989).  However, he argues that here, the state court did not actually review the arbitrator's factual findings, since its review was limited to determining whether the arbitrator acted within his authority, therefore the facts found in the arbitration decision are not entitled to preclusive effect.

Minnick's argument is unavailing.  Although we have held that a state court's review of an arbitration award is not entitled to preclusive effect where the state court limits its review of the arbitration to the question of "whether the arbitrator exceeded his authority or whether his decision was obtained by undue means," Jalil, 873 F.2d at 705, we have also held that where a state court does not actually limit its review to whether the arbitrator had exceeded his authority but rather undertakes its own interpretation of the underlying issue, the state court's judgment is entitled to preclusive effect.  Rider, 850 F.2d at 987.  This is because it is not for us to decide "[w]hether the Commonwealth Court exceeded its authority by straying beyond the confines of its proper standard of review;" rather, we must take the Commonwealth Court's analysis as presented.  Id. at 993.  Here, as in Rider, even though the Commonwealth Court recognized its limited standard of review, it actually undertook its own laches analysis and independently made a determination on the issue of prejudice: "the City did suffer prejudice from the admitted delay of Minnick in pursuing his

7

rights," because it "would be required to pay much more from its own funds than if Minnick had not slept on his rights." This is the very aspect of the state court ruling that the District Court incorporated into its analysis.

Having found that the Commonwealth Court's review of the arbitration award may be entitled to preclusive effect under the Full Faith and Credit Act, we must now evaluate whether the state court's findings are entitled to preclusive effect under Pennsylvania law.

Under Pennsylvania law, a legal or factual issue may not be relitigated in a subsequent action when:

> (1) An issue decided in a prior action is identical to one presented in a later action;
> (2) The prior action resulted in a final judgment on the merits;
> (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and
> (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998). Minnick argues that there should be no preclusion here because the Commonwealth Court judgment does not meet prongs (1) and (4).

Minnick first argues that the legal significance of the facts found in the state proceeding on laches is different from the legal significance of the facts at issue in the equal protection claim, and that the District Court erred in finding that the state court decided the equal protection issues. He states that because his equal protection claim, which requires an adjudication of whether he was "intentionally treated differently from others similarly situated and there [was] no rational basis for the difference in treatment,"

8

Olech, 528 U.S. at 564, has nothing to do with the state court's holding on laches, which is an "equitable concept going to the issue of repose," there can be no preclusion. In making this argument, Minnick appears to conflate two different kinds of preclusion and to misunderstand the basis of the District Court's grant of summary judgment.

The Supreme Court of Pennsylvania has recently clarified the difference between issue preclusion based on *pure* facts and issue preclusion based on *legal* facts. See Rue, 713 A.2d at 85. In Rue, the court explained that questions turning on pure facts are preclusive in later litigation dealing with the same facts, regardless of the legal standard or the public policy behind the different suits. Id. There, a K-Mart employee had been fired because "security personnel had observed her stealing a bag of potato chips from inventory and eating the chips." Id. at 83. She applied for and received unemployment compensation benefits. K-Mart appealed to a Referee, arguing that she had committed willful misconduct and therefore should not receive benefits, but the Referee found as a matter of fact that she had not stolen the potato chips and affirmed the grant of benefits. Id. Rue then filed suit against K-Mart for defamation. She filed a motion in limine seeking to prevent K-Mart from offering testimony to establish the truth of its assertion that she had stolen the chips. The trial court granted the motion, holding that K-Mart was precluded by the Referee's factual finding from litigating the issue of whether the chips were stolen. After the jury found K-Mart liable for defamation, K-Mart appealed. The Superior Court remanded for a new trial, finding that issue preclusion did not apply.

The Supreme Court affirmed. It first held that the Superior Court had erroneously

decided that the issues were not identical, but then affirmed the grant of a new trial because

K-Mart had not been afforded a "full and fair opportunity" to litigate at the Referee's

hearing.  Id. at 87.  In determining that the issues were identical, the court distinguished

Odgers v. Unemployment Comp. Brd. of Review, 525 A.2d 359 (Pa. 1987), in which it held

that "the Commonwealth Court's decision that a work stoppage by teachers was an illegal

'strike' pursuant to . . . the Public Employee Relations Act (PERA), did not have preclusive

effect in the teachers' subsequent appeal of the Unemployment Compensation Board of

Review's denial of unemployment compensation benefits pursuant to . . . the

Unemployment Compensation Law," because the two laws were "enacted to promote

decidedly different public policies," and "the determination of what constitutes a strike for

purposes of PERA is not coextensive with the determination whether a work stoppage is a

strike or a lock-out under the terms of the Unemployment Compensation Act."  Rue, 713

A.2d at 85.  The court explained that in the case before it, "[a]lthough the Superior Court . . .

correctly noted that the determination of whether Rue committed an act of willful

misconduct for purposes of the Unemployment Compensation Law is far different from the

determination of whether K-Mart made defamatory statements about her, those legal

conclusions are not at issue here."  Id.  Unlike in Odgers, the issue in Rue was

> neither one of law, nor a mixed question of law and fact.  Instead, it [was] an
> issue of pure fact, concerning whether Rue did or did not steal a bag of potato
> chips.  As such, the differences between the public policies of the
> Unemployment Compensation Law and the civil action for defamation are
> not relevant.  A fact is a fact, regardless of public policy.

Id.  See also Jones v. United Parcel Serv., 214 F.3d 402, 406 (3d Cir. 2000) (applying Rue

10

and predicting that the Pennsylvania Supreme Court would give preclusive effect in an American with Disabilities Act claim to the factual finding of the Workers' Compensation Judge that the plaintiff had "fully recovered from his work-related injury, regardless of the differing policies behind the ADA and the Workers' Compensation Act").

Just as in <u>Rue</u> and <u>Jones</u>, the legal conclusions of the Commonwealth Court about laches and the District Court's legal conclusion that Minnick's right to equal protection was not violated are not at issue here. What is at issue is the pure fact that if the City were forced to enroll Minnick in the pension plan, "[t]he City would be required to pay much more from its own funds than if [Minnick] had not slept on his rights." In the same way that it was proper (insofar as identity of issues was concerned) for the trial court in <u>Rue</u> to take the fact that Rue had not stolen the chips and apply the law of defamation to that fact, it was proper for the District Court here to take the facts found by the Commonwealth Court and apply equal protection law to those facts, finding that those facts provided "a rational basis for treating [Minnick] differently from the other employees for whom the City had been making contributions to the pension plan and also establish[ed] that [Minnick] was not similarly situated to the other employees." The District Court was doing what courts must do on summary judgment: asking whether there were any genuine issues of material fact. The Court held that, given the facts found by the Commonwealth Court, there were not. We agree.

Minnick next argues that he did not have a full and fair opportunity "to develop his equal protection case" in the arbitration. A party does not have an opportunity for a full and

11

fair hearing when the state proceedings "fall below the minimum requirements of due process as defined by federal law." Witkowski, 173 F.3d at 205. This is an "admittedly general standard." Rider, 850 F.2d at 991.

Minnick characterizes this argument as whether or not he had a fair opportunity "to develop his equal protection case" in the arbitration, but that is not the real question. The question is whether he had a full and fair opportunity to litigate the *facts* whose further litigation is precluded in this litigation: that is, the fact that the City would have to pay more from its own funds than if Minnick had contributed from the beginning.

Regarding these facts, Minnick argues that he did not have a fair opportunity to develop the record at the arbitration and that discovery in *this* case revealed that "there was no state funding of the pension plan which included Minnick for the time period which was pertinent." He quotes extensively from a deposition of the City Manager, to the effect that the state did not contribute any money for funding the retirement accounts of employees, like Minnick, who were hired before 1987.

Even if this evidence were to create a genuine issue, Minnick has not explained why he could not have presented this evidence to the arbitrator. This was indeed the focal issue in the arbitration – whether the City was prejudiced by having to pay more when Minnick later tried to enroll in the pension plan. Minnick does not raise any *procedural* deficiencies from the arbitration, other than by conclusorily stating that the record was "scanty." The record was only "scanty" because he did not develop it, on the very issue that was the crux of the arbitration. We have held on at least two occasions that the fact-finding

12

procedures involved in arbitration hearings meet the minimum standards of due process. See Witkowski, 173 F.3d at 205; Rider, 850 F.2d at 991-92. In Witkowski, we examined the arbitration hearing and found that it encompassed the facts at issue in the later federal action and that the Witkowskis had had a full opportunity to present their case there. We stated, "[t]hat the arguments made during the arbitration hearing were not accepted in full by the arbitrator does not mean that the Witkowskis were *prevented* from fully presenting them." Witkowski, 173 F.3d at 205 (emphasis added). Similarly, here, Minnick had the chance to fully develop the facts with regard to the City's funds at the arbitration. That he did not do so, and that his arguments were not accepted, does not mean that he did not have the opportunity.

Because the Commonwealth Court's finding that the City would have to pay more from its own funds than if Minnick had entered the pension plan earlier is entitled to preclusive effect, and because those facts establish that Minnick was not similarly situated to other City employees and that the City had a rational basis for not enrolling him in the pension plan, there remain no genuine issues of material fact regarding whether his equal protection rights were violated. We will therefore affirm the District Court's order granting summary judgment in favor of the City.

_____

13

TO THE CLERK OF COURT:

Please file the foregoing not precedential opinion.

/s/ Marjorie O. Rendell
Circuit Judge

14