**Carthel WHEELER, Plaintiff,**

v.

**Amalio NIEVES, Jr. and Ronald Humphrey, Defendants.**

**Civ. A. No. 88–3852.**

United States District Court,
D. New Jersey.

April 9, 1991.

Carthel Wheeler, pro se.

Glenn R. Jones, Office of the Atty. Gen., Trenton, N.J., for defendant Amalio Nieves, Jr.

## OPINION

LECHNER, District Judge.

This is an action brought pro se by Southern State Correctional Facility inmate Carthel Wheeler ("Wheeler") against Amalio Nieves, Jr. ("Nieves") and Ronald Humphrey ("Humphrey"), his arresting officers (collectively, the "Defendants"), arising out of events leading up to his arrest and occurring at trial. While Wheeler does not state the basis for jurisdiction, it appears the claims are brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.[1] Jurisdiction appears to be appropriate pursuant to 28 U.S.C. § 1331.

Nieves moves to dismiss the complaint on the ground that 28 U.S.C. § 1257(3) deprives this court of jurisdiction over the action. In addition, Nieves moves to dismiss the complaint under principles of res judicata and collateral estoppel.[2] For the reasons which follow, the motion is granted. In addition, the complaint against Humphrey is dismissed *sua sponte*.

*Facts*[3]

The complaint of Wheeler appears to be based on alleged constitutional violations arising out of both the conduct of Nieves and Humphrey leading up to Wheeler's arrest and the testimony of Nieves at Wheeler's trial.

Wheeler alleges he was convicted by a jury on 1 October 1986 of one count of conspiracy, two counts of possession of "CDS" and "[two] counts of CDS," and "was sentenced to 12 years with a minimum term of 5 years." Complaint at ¶ 26. His complaint states the convictions are "under appeal awaiting to be heard in Superior Court of New Jersey, Appellate Division, docket number A–3361–86–T4." *Id.* at ¶ 26.[4]

Wheeler alleges that at his trial on 30 September 1986, Nieves testified that Wheeler and "John Doe," apparently an unindicted co-conspirator, conspired on 11 March 1986 to sell Nieves $20 of white powdered cocaine. *Id.* at ¶¶ 3–4. Wheeler contends Nieves testified: he met Wheeler at 9:00 p.m. at the J.T. Bar on Summer Street in Paterson, New Jersey; he left the J.T. Bar at 9:15 p.m. and met Wheeler and John Doe at a corner approximately fifty feet away from the J.T. Bar, *id.* at ¶¶ 4–6; John Doe handed him four vials of cocaine as Wheeler said to John Doe, "Go ahead, give it to him," *id.* at ¶ 7; he then handed John Doe a twenty dollar bill, *id.* at ¶ 6; and after purchasing the cocaine from John Doe and Wheeler, he contacted Humphrey, his back-up, by radio and gave him a description of John Doe and Wheeler. *Id.* at ¶ 10. Wheeler alleges: "Humphrey and a companion [then] got out of their vehicle and made [Wheeler] drop his pants to his knees and searched him on the 'public street' with another individual named Lewis Goodwin." *Id.* at ¶ 13. Wheeler alleges

1. Section 1983 provides in relevant part:
   Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state ... subjects, or causes to be subjected, any citizen of United States ... the deprivation of any, rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....
   42 U.S.C. § 1983.

2. In support of his motion, Nieves submitted a brief in support of his motion for dismissal (the "Moving Brief") together with attachments, including the complaint of Wheeler and the decision of the appellate division of the superior court affirming Wheeler's conviction, *State of New Jersey v. Carl Wheeler*, No. A–3361–86T4 (App.Div. 8 December 1989) (the "App.Div. Opinion"). The Moving Brief contains only

one-and-one-half pages of legal argument set forth in conclusory fashion; it is inadequate at best.

In opposition to the motion, Wheeler submitted a 21 February 1991 letter-brief.

3. Because in deciding a motion to dismiss the factual allegations of the plaintiff must be taken as true, *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980), the facts are taken from the complaint. The factual allegations are set forth as clearly as possible given the lack of clarity in the presentation of the facts in the complaint.

4. The conviction was affirmed by the appellate division of the superior court on 8 December 1989. *See infra* at 620–22.

"there were [sic] no arrest nor was [Wheeler] taken to police headquarters for questioning or photograph." *Id.* at ¶ 14. Wheeler further alleges:

> Subsequently, Defendant Humphrey went to Paterson Police Headquarters ... and pulled a photo of [Wheeler] out of files, from June of 1983, pertaining to [Wheeler's] prior conviction for narcotics violation.... Humphrey handed this photo over to Detective Roy Daniels, who witnessed the photo being put into (1) five photo line-up for Defendant Nieves to review, and made out this report on April 9, 1986, almost a month after the alleged crime.

*Id.* at ¶¶ 16–18. Wheeler then alleges: "This photo line-up was ruled overly suggestive in Superior Court because of [Wheeler] being the only black male with two (2) punch holes (taken out of file), clean shaven, and under 66 inches tall." *Id.* at ¶ 19.

Wheeler alleges Nieves later recanted his testimony, instead testifying that he did not meet Wheeler at the J.T. Bar and that the crime occurred at 10:25 p.m., the hour written on the physical evidence used at trial, not 9:15 p.m. *Id.* at ¶ 9.

Wheeler alleges Nieves also testified at trial that he bought one ten dollar vial from Wheeler on 19 March 1986. Nieves allegedly testified that after this purchase he radioed a description of Wheeler to Humphrey and gave him a description of Wheeler's clothing which was identical to the description he gave Humphrey following the purchase of 11 March 1986. *Id.* at ¶¶ 21–22. Wheeler alleges: "Defendant Humphrey made a 'pass by' the area ... to verify that [Wheeler] was the suspect in this alleged crime without going through any positive identification procedure." *Id.* at ¶ 23.[5]

Wheeler filed the instant complaint on 6 September 1988. Without specifying whether he refers to the conduct of the Defendants resulting in his arrest or to the testimony of Nieves at trial, Wheeler asserts the "action of the [D]efendants [described above] denied [Wheeler] Due Pro-

cess of law in violation of the Fourth Fifth, Sixth, and Fourteen Amendment [sic]...." *Id.* at ¶ 28. In addition, he contends he was "deprived of his right to a fair and impartial trial ... when Nieves knowingly, willingly, and purposely ... falsified police reports, ... gave perjured testimonies [sic] under oath, ... and used false evidence." *Id.* at ¶ 29. Wheeler contends Humphrey violated his constitutional rights by conducting a "pass by" prior to the arrest of 19 March 1986 without first engaging in "positive identification procedures." *Id.* at ¶ 30. Wheeler next alleges: "[Wheeler] was semi-strip searched on the public street without an arrest, afterwards, a overly suggestive photo from [Wheeler's] prior conviction for narcotics drug was then put into a line-up and used as evidence violating search and seizure, double jeopardy standards...." *Id.* at ¶ 31. Next, Wheeler alleges the crimes for which he was convicted were fabricated in violation of his constitutional rights. *Id.* at ¶ 32. In addition, Wheeler contends: "[He] had no co-defendant in the alleged crime of conspiracy on March 11, 1986, moreover; all through trial there was no one but a John Doe who can be anyone, violating [Wheeler's] right of access to the courts...." *Id.* at ¶ 33. Finally, Wheeler contends: "All narcotics drug allegedly purchased from the accused or whoever, being marked with the name of John Doe's [sic] ... was a violation of [Wheeler's] Fourth Amendment of the ... Constitution and Due Process...." *Id.* at ¶ 34.

On 8 December 1989, approximately fifteen months after Wheeler filed the complaint, the appellate division of the New Jersey superior court decided his appeal from the conviction. Wheeler raised on appeal the following issues:

> I. THE APPELLANT'S FIFTH AMENDMENT CONSTITUTIONAL RIGHT NOT TO TESTIFY WAS VIOLATED WHEN THE STATE IMPERMISSABLY [SIC] ELICITED TESTIMONY REGARDING HIS PRIOR INVOLVEMENT WITH LAW ENFORCEMENT.

---

5. It is not clear from the complaint when Wheeler was arrested.

II. THE STATE IMPERMISSABLY [SIC] INTRODUCED OTHER CRIMES EVIDENCE TO ESTABLISH A GENERAL DISPOSITION FOR WRONGDOING IN VIOLATION OF [NEW JERSEY] EVIDENCE RULE 55.

III. THE TRIAL COURT ERRED IN PERMITTING AN IN COURT IDENTIFICATION OF APPELLANT AS THERE DID NOT EXIST SUFFICIENT INDICIA OF RELIABILITY OUTWEIGHING THE CORRUPTING EFFECT OF THE SUGGESTIVE PHOTO ARRAY.

IV. APPELLANT WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHICH AFFECTED THE OUTCOME OF THE TRIAL.

V. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

App.Div. Opinion at 3. In addition, Wheeler raised the following issues in his supplemental pro se brief:

I. NO RATIONAL TRIER OF FACT COULD HAVE FOUND THE APPELLANT GUILTY OF CONSPIRACY BEYOND A REASONABLE DOUBT ON THE EVIDENCE PRESENTED BY THE STATE.

II. THE APPELLANT'S SENTENCE OF 12 YEARS WITH A 5 YEAR PAROLE DISQUALIFIER IS IN VIOLATION OF THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION.

App.Div. Opinion at 4.

Wheeler asserted before the appellate division that testimony by Nieves and Humphrey violated his Fifth Amendment right to be free from self-incrimination because it could be inferred from such testimony that Wheeler had previously engaged in crime. App.Div. Opinion at 4. Wheeler also argued that such testimony constituted the impermissible admission of evidence of other crimes. App.Div. Opinion at 4–6.

Wheeler additionally argued his in-court identification was tainted by the earlier identification based on an unduly suggestive photograph array. App.Div. Opinion at 6–7.

The appellate division determined Wheeler's Fifth Amendment right against self-incrimination was not violated by the testimony of Nieves and Humphrey. App.Div. Opinion at 4. Additionally, it concluded any inference from their testimony that Wheeler had previously been engaged in crime was not unduly prejudicial and did not constitute the improper admission of evidence of prior crimes. App.Div. Opinion at 5–6. The appellate division also concluded the in-court identification of Wheeler was not tainted by the earlier identification based on an unduly suggestive photograph array.

In deciding the propriety of the in-court identification, the appellate division summarized the trial court proceedings on the issue of the suggestiveness of the photograph array as follows:

> Prior to commencement of Wheeler's trial a *Wade* hearing was held in order to determine whether the photo array used at the police station was unduly suggestive because the defendant's photo had two holes punched in the top, whereas the other four photos used did not. The trial court found that the photo array utilized by the State was unnecessarily suggestive, but that there was [sic] sufficient indicia of reliability to outweigh the corrupting effect of any suggestive identification. Therefore, the arresting officer was permitted to make an in-court identification of [Wheeler].

App.Div. Opinion at 3. The appellate division affirmed the decision of the trial court permitting the in-court identification of Wheeler because it agreed that the in-court identification contained sufficient indicia of reliability to outweigh the prejudicial effect of the suggestive photograph array:

> The [trial] court correctly ruled that the photo lineup was unnecessarily suggestive, but that there were clearly sufficient independent indicia of reliability to support the in-court identification.

Nieves made an unequivocal identification of [Wheeler] as the person involved in the two sales to him. The sales took place face to face giving Nieves ample opportunity to view defendant, as well as reinforcing the impression gained from each encounter. Nieves identified defendant using the photo array shortly after the first sale, and then saw defendant again at the second sale. Furthermore, Nieves' identification is supported by Humphrey's corroborative testimony. There was no error in permitting in-court identification of defendant in this case.

App.Div. Opinion at 6–7. As to the other issues raised by Wheeler, including the sufficiency of the evidence raised in Point I of his supplemental pro se brief, the appellate division stated simply:

We have reviewed carefully all other arguments raised by [Wheeler] in his brief and supplemental *pro se* brief regarding ineffective assistance of counsel, unduly excessive sentence and that the conviction for conspiracy to distribute a controlled dangerous substance was against the weight of the evidence, and find that defendant's arguments on these points are clearly without merit.

App.Div. Opinion at 7. The conviction of Wheeler was affirmed by the appellate division on 8 December 1989. It does not appear Wheeler sought to further appeal the conviction.

*Discussion*

A. Standard of Review

A court may dismiss a complaint for failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78

S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). In deciding such a motion under Fed.R. Civ.P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 1921, 64 L.Ed.2d 572 (1980); *Markowitz*, 906 F.2d at 103; *Melikian v. Corradetti*, 791 F.2d 274, 277 (3d Cir.1986); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984).

In applying this standard of review to motions to dismiss complaints brought pro se, such submissions "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972).

B. Section 1257

■ As his first ground for dismissal, Nieves contends this court is deprived of jurisdiction over Wheeler's complaint by 28 U.S.C. § 1257(3), which provides for review of decisions issued by a state's highest court only by writ of certiorari to the United States Supreme Court and which precludes an attack on such decisions through an action in a federal district court.[6] Nieves contends: "[Wheeler] claims that the acts which lead [sic] to the trial court's determination of his guilt violated his constitutional rights. That decision as well as the subsequent Appellate Decision is not reviewable by this court.... A United

---

6. Section 1257 provides in relevant part:
Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

\* \* \* \* \* \*

(3) By writ of certiorari, where the validity of ... a State statute is drawn in question on

the ground of its being repugnant to the Constitution, treaties or laws of the United States, or where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of, or commission held or authority exercised under, the United States.
28 U.S.C. § 1257.

States District Court may not entertain an appeal from judgments of the highest court of a State." Moving Brief at 2 (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923)).

Nieves correctly asserts that a party cannot attack the judgment of a state's highest court by bringing an action in federal district court. *Feldman,* 460 U.S. at 476, 103 S.Ct. at 1311 (in action in which plaintiffs sought voiding of judgment of state's highest court by federal district court, the Supreme Court held "the United States District Court is without authority to review final determinations of the [state's highest court] in judicial proceedings. Review of such determinations can be obtained only in this [the United States Supreme] Court."); *Rooker,* 263 U.S. at 415–16, 44 S.Ct. at 150 (district court had no jurisdiction to void the judgment of the state's highest court for constitutional errors). However, Nieves incorrectly relies on this provision in moving for dismissal.

Wheeler's complaint does not attack the judgment of conviction of the state trial court or the affirmance by the appellate division so as to effectively constitute an appeal from the judgment of conviction. Rather, Wheeler brings an action against the arresting and testifying officers for constitutional violations which allegedly occurred during the events leading up to his arrest and for fabricating the crimes of which he was accused and for which he was convicted. Section 1257 is inapplicable in connection with this motion.

#### C. Claim and Issue Preclusion

In addition, without specifying as to whether he refers to the state trial court's judgment of conviction or the appellate division affirmance of that conviction, and without explaining his reasoning for so contending, Nieves conclusorily asserts the in-

stant action by Wheeler is barred by principles of res judicata and collateral estoppel. Moving Brief at 3.

The term res judicata has been given a variety of meanings, some of which incorporate the distinct concept of collateral estoppel. *See Gregory v. Chehi,* 843 F.2d 111, 115 (3d Cir.1988) (citing A. Vestal, Res Judicata/Preclusion, V–13 to 14 (1969)). "To reduce the confusion that resulted from the interchangeable use of these terms, the courts have refined the nomenclature used in the preclusion doctrine." *Id.* (citing *Wade v. City of Pittsburgh,* 765 F.2d 405, 408 (3d Cir.1985)). The terms "claim preclusion" and "issue preclusion" will be used in this opinion. *See Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); *Electro-Miniatures Corp. v. Wendon Co.,* 889 F.2d 41, 44 (3d Cir.1989); *Gregory,* 843 F.2d at 115–116; *Rider v. Pennsylvania,* 850 F.2d 982, 989 (3d Cir.), *cert. denied,* 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988). The term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel. *Electro-Miniatures,* 889 F.2d at 44; *Gregory,* 843 F.2d at 116.

■ Congress has provided that "judicial proceedings shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of [the] State ... from which they are taken." 28 U.S.C. § 1738.[7] Based upon this statutory direction, federal courts are to raise the issue of the preclusive effect of prior state court rulings whenever the courts of the state "from which the judgments emerged would do so." *Kelley v. TYK Refractories Co.,* 860 F.2d 1188, 1193 (3d Cir.1988) (quoting *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)). *See also Rider,* 850 F.2d at 988; *Van Dissel v. Jersey Cent. Power & Light, Co.,* 194 N.J. Super. 108, 121–122, 476 A.2d 310 (App. Div.), *cert. denied,* 99 N.J. 186, 491 A.2d

---

7. In the Act of May 26, 1790, ch. 11, 1 Stat. 122 Congress required all federal courts to give such preclusive effect to state court judgments "as they have by law or usage in the courts of the state from [which they are] taken." In essentially unchanged form, the Act of May 26, 1790 is now codified as 28 U.S.C. § 1738.

690 (1984). Accordingly, the preclusive effect under 28 U.S.C. § 1738 of the trial court judgment of conviction and the appellate division affirmance will be determined with reference to New Jersey law. *See Migra,* 465 U.S. at 75, 104 S.Ct. at 892; *Towers, Perrin, Forster & Crosby, Inc. v. Brown,* 732 F.2d 345 (3d Cir.1984).

Claim and issue preclusion are "related but independent preclusion concepts." *Gregory,* 843 F.2d at 115. *See also Rider,* 850 F.2d at 988. These doctrines generally prohibit relitigation of claims and issues decided in a prior proceeding. As summarized by the Supreme Court in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979):

> Under the doctrine of [claim preclusion], a judgment on the merits in a prior suit bars a second suit involving the same parties *or their privies* based on the same cause of action. Under the doctrine of [issue preclusion], on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Id.* at 326 n. 5, 99 S.Ct. at 649 n. 5 (emphasis added) (citing 1B J. Moore, Moore's Federal Practice ¶ 0.405(1) at 622–624 (2d ed. 1974)). Both doctrines " 'shar[e] the common goals of judicial economy, predictability and freedom from harassment....' " *Electro–Miniatures Corp.,* 889 F.2d at 44 (quoting *Gregory,* 843 F.2d at 116).

Although issue and claim preclusion are similar, they have different consequences. "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *McNasby v. Crown Cork and Seal Co.,* 888 F.2d 270, 275 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990) (citing *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1). " 'Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been liti-

gated and decided.' " *Id.,* n. 7 (citing *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1).

Claim preclusion rules formulated by courts are "designed to draw a line between the meritorious claim[s] on the one hand and the vexatious, repetitious and needless claim[s] on the other hand." *Purter v. Heckler,* 771 F.2d 682, 689–90 (3d Cir.1985). Litigation should not be renewed after a case has been fully presented before a court and the matter has been decided against a litigant. *Id.*

Issue preclusion "embodies the principle that 'later courts should honor the first actual decision of a matter that has actually been heard and litigated.' " *Rider,* 850 F.2d at 989 (quoting C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4416 at 136 (1981)). "By precluding a court from making a second determination as to an issue on which an earlier court has previously rendered a decision, the doctrine of issue preclusion assists in the 'maintenance of the social order' and 'secure[s] the peace and repose of society by the settlement of matters capable of judicial determination.' " *Id.* (quoting *Southern Pacific Railroad v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27–28, 42 L.Ed. 355 (1897)).

To invoke claim preclusion under New Jersey law, it is required that the subsequent action involve substantially similar or identical causes of action, issues, parties and relief as were involved in the prior action. *Culver v. Insurance Co. of North America,* 115 N.J. 451, 460, 559 A.2d 400 (1989). A final judgment by a court of competent jurisdiction is also required. *Id.* To characterize two causes of action as the same for claim preclusion purposes, a court should consider (1) whether the wrong for which redress is sought is the same in both actions (that is, whether the acts complained of and the demand for relief are the same), (2) whether the theory of recovery is the same, (3) whether the witnesses and documents necessary at trial are the same and (4) whether the material facts alleged are the same.

*Id.* at 461–462, 559 A.2d 400 (citations omitted).

■ In the instant case, there is a sufficient identity of causes of action and parties to hold the prior criminal proceedings preclusive of the present civil action. While technically the parties in the prior criminal action were the State of New Jersey and Wheeler, not Humphrey and Nieves and Wheeler, Humphrey and Nieves were privies of the State in the prior criminal action. "Privity ... 'is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata.'" *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir.1990). *See also Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1064 (3d Cir.1980). In the criminal action, the State prosecuted its case through Humphrey and Nieves, presented its case and evidence through Humphrey and Nieves and relied on the substance and credibility of their testimony. There was an identity of functions and interests in the criminal action between the State and Humphrey and Nieves. The parties in the instant case are essentially identical to those present in the prior criminal proceedings, given for the purposes of this motion Humphrey and Nieves were the privies of the State in the prior action.

In addition, the wrongs alleged by Wheeler in the instant civil action were also at issue in the prior criminal proceedings. With respect to the trial court proceedings, the alleged illegal conduct of Humphrey and Nieves constituted a potential defense for Wheeler and was either raised by him or was waived under claim preclusion principles, in that it should have been raised in the prior criminal proceedings but was not. *See McNasby*, 888 F.2d at 275. Moreover, the testimony and physical evidence which Wheeler relies on in the instant civil case are identical to the evidence he either contested or submitted in the prior criminal proceedings, or should have contested or submitted in order to avoid waiving a defense asserting the illegality of the conduct of Humphrey and Nieves. *See Id.* In addition, the underlying facts in the instant action involve identical events to those in the prior criminal proceedings pertaining to Wheeler's arrest and prosecution.

In addition, Wheeler in essence challenged the legality of the conduct of Humphrey and Nieves before the appellate division by challenging the sufficiency of the evidence in Point I of his supplemental pro se brief. This issue depends at least in part on the credibility of the testimony of Humphrey and Nieves. The appellate division ruled Wheeler's challenge to the sufficiency of the evidence to be "clearly without merit." App.Div. Opinion at 7. Claim preclusion principles apply to bar the instant complaint.

■ In addition, a number of issues raised in the instant complaint are barred by principles of issue preclusion, which "preclude[ ] the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted." *Melikian*, 791 F.2d at 277 (citing *New Jersey–Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education*, 654 F.2d 868, 876 (3d Cir.1981)); *State v. Gonzalez*, 75 N.J. 181, 380 A.2d 1128 (1977)). Issue preclusion does not extend to collateral issues nor to matters inferred from the judgment. *Id.* To be precluded, a factual issue must have been litigated and determined. *Id.* The issue must have been " 'distinctly put in issue' and 'directly determined' adversely to the party against which the estoppel is asserted." *New Jersey–Philadelphia Presbytery*, 654 F.2d at 876 (quoting *City of Plainfield v. Public Service Electric and Gas*, 82 N.J. 245, 257–58, 412 A.2d 759 (1980)). In addition, "[i]f a party is precluded from litigating an issue with an opposing party, he is also precluded from doing so with another person unless he lacked a full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue." *Melikian*, 791 F.2d at 277 (citing *United Rental Equipment Co. v. Aetna Life & Casualty Insurance Co.*, 74 N.J. 92, 376 A.2d 1183 (1977)). *See also In re Braen*, 900 F.2d

621, 628 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991).

■ If there is more than one ground for the prior judgment, none of which were expressly relied upon, the prior judgment may not have preclusive effect in the subsequent action because it may not be discernable by the subsequent court which issues were actually litigated in the prior action. *New Jersey–Philadelphia Presbytery,* 654 F.2d at 876 (citing *Ettin v. Ava Truck Leasing Inc.,* 53 N.J. 463, 480–81, 251 A.2d 278 (1969)).

■ To the extent Nieves relies on the judgment of conviction of the state trial court to preclude Wheeler's instant claim, "[t]he federal decisions have made clear that the rule of collateral estoppel in criminal cases is not be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (barring second prosecution of robbery suspect where suspect was found guilty in first prosecution for robbery of different victim in identical incident, under rules of collateral estoppel and double jeopardy). Where the judgment of conviction was entered upon a general verdict, a court must " 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge and other relevant matter' " to determine whether preclusion should apply, unless it is clear from the face of the complaint that the action is barred by the issues decided in the prior proceedings. *Id.* (quoting *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948)); *Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). *See also Chisholm v. Defense Logistics Agency,* 656 F.2d 42, 48–50 (3d Cir.1981) (administrative board erred in according convictions of civil servant preclusive effect in removal proceedings, where board did not have before it pleadings, transcript and exhibits from criminal trial).

" 'In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment.' " *Kauffman,* 420 F.2d at 1274 (quoting *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951)). *See also In re Coruzzi,* 95 N.J. 557, 571, 472 A.2d 546 (1984) (conviction of judge conclusively established his guilt in subsequent disciplinary proceedings), *appeal dismissed,* 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 8 (1984); *Figueroa v. Hartford Insurance Co.,* 241 N.J.Super. 578, 583, 575 A.2d 888 (App.Div. 1990) (convicted person could be collaterally estopped from relitigating issue of intent to commit crime after issue was settled in previous criminal action); *Allstate Insurance Co. v. Schmitt,* 238 N.J.Super. 619, 622, 570 A.2d 488 (App.Div.) (a judgment of conviction is conclusive evidence of the convicted person's guilt and may be asserted against that person under principles of issue preclusion in later proceedings), *cert. denied,* 122 N.J. 395, 585 A.2d 394 (1990). In addition, " 'considerations of state-federal comity and judicial efficiency may dictate that a civil rights action be dismissed when the alleged deprivation has been examined fully during a state criminal trial *or has been waived by the complainant....'* " *Kauffman,* 420 F.2d at 1273 (quoting *Mulligan v. Schlachter,* 389 F.2d 231 (6th Cir.1968)) (emphasis added).

Wheeler was tried and found by a jury to be guilty beyond a reasonable doubt, a standard of proof higher than that present in the instant civil action. Wheeler had every incentive to fully litigate in the prior criminal proceedings all issues he raises in this matter, given the risk he faced of losing his freedom. Wheeler challenges the credibility of the testimony of Nieves, the written reports and tangible evidence and asserts the crimes were fabricated. Wheeler had the opportunity to challenge the credibility of the testimony and evidence and the legitimacy of the charges in the prior criminal proceedings. The jury was sufficiently convinced of the credibility of such testimony and evidence and the legitimacy of the charges to find Wheeler

guilty beyond a reasonable doubt of the crimes of which he was accused.

Wheeler challenged on appeal the credibility of the testimony and evidence presented by Wheeler and Nieves by challenging the sufficiency of the evidence for conviction at Point I of his supplemental pro se brief. The appellate division expressly found his challenge to the sufficiency of the evidence was "clearly without merit." App.Div.Op. at 7. Wheeler is foreclosed from collaterally attacking the conviction in a subsequent action on these grounds.[8]

In addition, to the extent the complaint is based on the alleged use of an overly suggestive photograph array, such claim is foreclosed. Wheeler raised the suggestiveness of the photograph array both during the trial court proceedings and at Point III of his appellate brief. Both the trial court and the appellate division determined Wheeler stated no constitutional injury by alleging use of an overly suggestive photograph array. It was held the in-court identification contained sufficient indicia of reliability to be admitted into evidence apart from the use of the photograph array. *See* App.Div. Opinion at 2–3, 6–7. Those determinations foreclose Wheeler from raising in these proceedings a claim of a constitutional injury arising from the use of the overly suggestive photograph array.

The motion of Nieves to dismiss the complaint is therefore granted. To decide otherwise would allow Wheeler a second opportunity to litigate claims which were either litigated in the prior proceedings or which he had every incentive to raise in those proceedings but which he waived.

Wheeler is not entitled to "two bites at the apple."

■ In addition, because claim and issue preclusion likewise bar Wheeler's complaint against Humphrey, the complaint against Humphrey is dismissed *sua sponte.* A court may dismiss a complaint of its own initiative if the complaint affords a sufficient basis for the court's action. *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980); *Coggins v. Carpenter,* 468 F.Supp. 270, 279 (E.D.Pa.1979) (dismissing complaint *sua sponte* against non-moving defendants under Fed.R.Civ.P. 12(b)(6)). *See also Reich v. Beharry,* 686 F.Supp. 533, 535 (W.D.Pa.1988), *aff'd,* 883 F.2d 239 (3d Cir.1989) (dismissing complaint *sua sponte* against non-moving defendant because jurisdictional defect supporting dismissal of complaint against moving defendant also supported dismissal of complaint against non-moving defendant).

■ While the complaint is not entirely clear in its allegations, Wheeler appears to assert that he was arrested without probable cause because Humphrey conducted a " 'pass by' [of] the area ... to verify that [Wheeler] was the suspect in this alleged crime without going through any positive identification procedure." *Id.* at ¶ 23. It appears Wheeler did not challenge the legality of his arrest in the prior criminal proceedings. As such, Wheeler was convicted upon a presumptively legal arrest and waived the opportunity to challenge its legality. Wheeler is therefore foreclosed from collaterally attacking the arrest in a subsequent action by attacking the legality of Humphrey's "pass by" procedure. This

---

8. In addition, to the extent Wheeler's section 1983 action against Humphrey and Nieves is based on allegedly perjured testimony, such action must be dismissed on immunity grounds. As the Supreme Court held in *Briscoe v. La Hue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), section 1983 "did not abrogate the absolute immunity existing at common law." *Id.* at 334, 103 S.Ct. at 1115. In determining whether absolute immunity applied in a section 1983 action brought by a convicted defendant against the police office who testified against him at his trial, the Court looked at the role of the officer in giving such testimony, not at his position as a law enforcement officer. The Court held the

police office was absolutely immune from section 1983 liability because he testified as a witness in a judicial proceeding: "A police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury." *Id.* at 342, 103 S.Ct. at 1119. *See also Williams v. Hepting,* 844 F.2d 138, 141–42 (3d Cir.) ("Witnesses at trial are afforded absolute immunity to encourage complete disclosure in judicial proceedings."), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988).

being the sole allegation in the complaint against Humphrey, the complaint against Humphrey is dismissed *sua sponte*.

## Conclusion

For the foregoing reasons, the complaint of Wheeler is dismissed in its entirety.